746 So.2d 693 (1999)
STATE of Louisiana
v.
Shawndell GOODMAN.
No. 99-K-2352.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1999.
Harry Connick, District Attorney, Robert Blackburn, Assistant District Attorney, Jackie Santoyo, Assistant District Attorney, New Orleans, LA, Attorney for Relator.
C. Gary Wainwright, New Orleans, LA, Attorney for Respondent.
*694 Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER and Judge DENNIS R. BAGNERIS.
WALTZER, Judge.

STATEMENT OF THE CASE
On 21 June 1999, the defendant was charged with one count of simple possession of crack cocaine, a charge to which he has pled not guilty. His motion to suppress the evidence was heard and granted on 25 August. The State now comes before this Court seeking relief from this ruling. There is no indication of a trial date.

FACTS
At approximately 9:30 p.m. on 1 June 1999, police officers arrested the defendant, Shawndell Goodman, for possession of crack cocaine. At the suppression hearing, Off. Joseph Momus testified he and his partner were on patrol when they observed a car being driven by the defendant Shawndell Goodman. Off. Momus testified he could not see the license plate on the car, and he noticed the windshield of the car was severely cracked. He testified he and his partner stopped the car and ordered Goodman to exit the car. Off. Momus testified Goodman admitted he did not have a driver's license and did not have insurance for the car. Off. Momus stated he and his partner then arrested Goodman, and incident to this arrest they searched Goodman and found a single rock of crack cocaine in his pants pocket. On cross-examination, Off. Momus insisted the car was not parked, and he testified the temporary license tag was lying on the back ledge of the car. He also admitted he stopped the car in the rear driveway of the Fischer Housing Project.
Valencia Goodman, the defendant's sister, testified that she was at Goodman's apartment in the project on the date of his arrest. She testified Goodman had been outside, listening to the radio in his parked car, and he had just entered the apartment to use the bathroom. She testified someone knocked on the door and told her that police officers were investigating the car, and she informed Goodman. She testified Goodman left the apartment, and by the time she had found her shoes and also gone to the car, Goodman had already been arrested and placed in the back of a police car. Ms. Goodman testified Goodman had recently acquired the car, but she insisted he had not been driving it because it had a cracked windshield, and he did not intend to drive the car until he got the windshield repaired. She also testified that no one else had been driving the car in the short time Goodman was inside the apartment.
Shawndell Goodman denied driving the car that night. He testified he had obtained the car, but he had not driven it for a few weeks because his girlfriend, who he indicated owned the car, had gotten mad and had broken the windshield, placing two large cracks in it. Goodman testified he was trying to save money to get the windshield repaired, but he insisted he would not drive the car until the windshield was fixed. He testified he had been outside, working on the radio, and he briefly left to use the bathroom in his apartment, which was near the location where the car was parked. He testified that while he was in the bathroom, his sister told him the police were investigating his car. He stated he went outside and immediately produced a State identification to show he lived in the project. However, he could not produce a driver's license (which he subsequently obtained) or proof of insurance (which he also subsequently obtained) and the officers arrested him and placed him in their police car. He insisted he knew nothing about the cocaine until he was booked for its possession at Central Lockup. He also insisted he had not been driving the car and that the car was parked when he left his apartment after being alerted that the police were investigating the car.

DISCUSSION
The State argues the trial court erred in suppressing the evidence because *695 the officers had reasonable suspicion to stop the car, given its lack of displayed license and its cracked windshield, and when the defendant admitted he did not have a driver's license or proof of insurance, they had probable cause to arrest him. Incident to this arrest, they searched him and found the rock of crack cocaine. Thus, it argues, the stop, arrest, and resulting discovery of the cocaine were all lawful.
If the trial court believed the officer's testimony, the State would be correct. However, a reading of the suppression hearing transcript indicates the trial court did not believe the testimony of the officer, that the defendant was driving the car, but instead believed the testimony of the defendant and his sister that the car was parked and the defendant was not even in the car, when the officers decided to investigate it. The State argues that the trial court did not indicate it did not believe the officer's testimony. It then argues, however, that any credibility determination must be left to the "trier of fact" at trial. This reasoning is flawed. The purpose of a suppression hearing is to determine if evidence should be presented at trial. The "trier of fact" at a suppression hearing is the judge. This court rejected this very argument in State v. Perez, 99-2063, p. 5 (La.App. 4 Cir. 9/15/99), 744 So.2d 173, 176, where this court stated:
The State suggests that any question about [the officer's] credibility is "one to be left for the trier of fact." Of course, the State is correct that issues of credibility are to be left to the trier of fact; however, the trial judge is the trier of fact at a motion to suppress hearing. Here, the trial judge found the police officer not credible. Considering that [the officer's] testimony regarding the basis for the traffic stop was contradicted by the police report and that his demeanor was not goodas evidenced by defense counsel's request on the record that he be instructed not to look at the district attorney before answering we cannot say the trial judge's finding was manifestly erroneous. Therefore, this court must accept that there was not a sufficient basis for the traffic stop of the defendant's vehicle based on the lack of a displayed temporary tag.
Here, it is true that the judge did not actually state that she did not believe the officer. However, the tenor of her remarks indicates she found the defense witnesses more credible on the subject of whether the defendant was driving the car when the "stop" and arrest occurred. She stated:
The Court heard the testimony of both the officer in this case and the two witnesses. The Court took notice of the fact that the police report says that there's a moving traffic violation, and the Court also noted the testimony from the defense witnesses that corroborate that what was  what the police term a stop and what the defense witnesses term as a stationary vehicle are at odds with each other.
The Court takes notice that the defendant lived at the residence where this car was allegedly stopped versus checked, and the Court finds that there's no probable cause for the arrest.
Thus, although the judge did not state the magic words that she did not believe the officer's testimony, the import of her statements shows the ruling was based on a credibility call, which the court made in favor of the defense. The trial court judge was in the best position to judge the witnesses' credibility, being able to observe their demeanor. There does not appear to be anything in the defense witnesses' testimony, which would show that the judge abused her discretion by believing the defense witnesses rather than the police officer. If the car was indeed parked in a parking lot in the project when the officers encountered it, then there was no basis for the stop, and there was no basis for arresting the defendant if he was not driving the car. Thus, the cocaine *696 seized pursuant to a search incident to the arrest was unlawful, and the trial court properly suppressed this evidence.
APPLICATION FOR SUPERVISORY WRITS GRANTED. RELIEF DENIED. JUDGMENT GRANTING MOTION TO SUPPRESS AFFIRMED.